Good morning, Your Honors. Lisa Peterson for Petitioner Daryl Miles. First of all, since the time that the opening and reply brief were filed in this case, there were two subsequent Supreme Court cases that I'd like to discuss. And this is in regards to the Wheeler-Batson issue in the brief. And the first case is Johnson v. California. And in that case, the Supreme Court held that the Wheeler — the Supreme Court held that the California standard, that there was — that you had to prove a more likely-than-not standard is an inappropriate yardstick by which to measure the sufficiency of a prima facie case of purposeful discrimination, which is required under Batson. And in this case, the California court of appeal had decided the Batson issue in regards to the Wheeler standard, that the defendant had to show a strong And pursuant to Johnson and also to the Ninth Circuit case of Wade v. Terhune, that was an erroneous standard that was used, because those standards are more stringent than the Batson standard. And also, in Miller L. v. Dredge, another new Supreme Court case, the Court stated, if a prosecutor's preoffered reason for striking a black panelist applies just as well to an otherwise similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination. And this case is very relevant to the instant case, because the record shows that the — well, first of all, it shows that in regards to — let me backtrack. There were two African-American jurors who were — who were stricken from the jury pool. And in regards to the first one, Kevin W., although the defender objected to the — to the preemptory challenge, the prosecutor gave no reason for the challenge. And in regards to the second black potential juror, Virtue J., the prosecutor stated that the basis of the exclusion was the employment of the juror's husband who worked in a group home that tends to deal with delinquent kids. And it turned out that there was also at least one other juror who had a similar background, who themselves worked with a youth agency, dealt with kids in trouble. And, in fact, the other juror stated that — stated that, I deal with a lot of kids and so forth, so I've seen a lot of people on some of the cases involving the kids, I thought that the kids didn't get a fair trial. And this other juror also said that two of their brother-in-law were in and out of jail all of the time. And yet that juror was — there was no challenge against that juror, and yet in regards to Virtue J., she was challenged because she was black. Excuse me, but by the way, Virtue J. was going to be the alternate juror, is that right? Yes, that's right. And the other juror who had a similar background, was that one of the jurors or an alternate? It was a juror. Juror. And so in the brief, it just shows all the similarities. Basically, there was nothing unique about the two black jurors who were challenged. Let me interrupt you for a moment. Yes. Just — I cannot visualize what went on in the trial court, that is, in the state trial court. I presume there were 12 jurors, prospective jurors, drawn and occupied the box. And during the course of selecting the 12 who were going to be jurors, the challenge of Kevin W. occurred. That's right. Am I right so far? Yes, yes. And that the process went on until 12 jurors were selected, and I presume sworn, or maybe not. But in any event, those 12 were selected, and during the course of the selection of the 12 who actually sat, Kevin W. was challenged. Right so far? Yes. And then the court proceeded to select a number of alternate jurors. That's right. How many alternate jurors were selected? Now, at this point, I'm not sure. I think it was three or four alternates. Right. At least two. Right. Maybe more. Yes. And during the course of the selection of the alternate jurors, Virtue J. was challenged. Right. And then the trial proceeded, and did any of the alternate jurors participate in the decision of the case? Actually, at this point, I'm not sure if — I believe there was at least one, but — Well, now, so if — if the selection of the alternate jurors was somehow foul, but none of them were used, and we do not know whether the juror who was drawn to replace Virtue J., who I presume was not black, we don't know whether that person ever participated in the decision-making. Do we? Actually, I would have to look through the record. I'm not sure about what happened in the end. I can't find it any place in anything that I have read so far, and I'm asking you if you know of anything that is before us now from which I could answer that question. Well, I think the record was a little bit unclear as to — All right. It's totally — for my purposes, unless somebody points me to it, it's totally void as to that aspect. Now, what we are litigating here, then, is what might be an erroneous or unlawful challenge of an alternate juror that had nothing to do with the decision-making in this case. Am I right? I think — well, that's an open question in that it just wasn't, you know, clear, the record. I mean, perhaps a remand would be appropriate because the record just isn't clear enough with us, the state records that I was able to obtain. Well, now, normally, normally, if a person is making a Batson challenge, they have to tell the court why they're making the challenge. Now, someplace the responsibility lies to say to the trial judge in the first instance, here's what your panel is like, here's what's going on here. Now, it might be that the only plausible concern that we should have about selecting of an alternate juror who never served is that how it tends to characterize the motives that occurred in the challenge of the first juror. But I don't know. I don't know how all this works because I don't know what the trial judge is to do when the first challenge is made. If the trial judge says, okay, I find a prima facie case because you challenged one juror, now you make your explanation. On the other hand, if the trial judge does not conclude that the challenging of one juror is a prima facie case, then there is nothing to be said, as in this case. Well, Your Honor, I don't think that's true. And the reason is when you're making the prima facie case, it's by a showing of the totality of the relevant facts. And so I think you can consider also the challenge to the alternate juror, and also consider the fact that there's really nothing unique about Kevin W. that would differentiate him from the other jurors. Well, it doesn't. There doesn't have to be anything unique to use a preemptory challenge as long as it's not done for an improper motive. I'm trying to visualize how this would play out in a courtroom. If we have the first challenge, and that does not constitute a prima facie case of discrimination, calling for an explanation, is the trial judge to say, okay, we're going to allow that challenge, but I want this juror to wait here, and I want to know what you do with these alternates over here before I can figure out whether or not this is a prima facie case as to this first juror. What do we do in this situation? Now, it seems to me on the surface that we're litigating a purely abstract issue in this case that had nothing to do with the composition of the jury that actually found this man guilty. That's a struggle. Well, okay. In the new case of Miller L., the Supreme Court specifically stated, if a prosecutor's preoffered reason for striking a black panelist applies just as well to an otherwise similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination. And here there was all of the characteristics that we know about Kevin W. were shared by many of the jurors. No. And that was established. Don't we have to first get to a prima facie case? Don't we have to first get there? Well, like I said, you know, if you look at the totality, it is Petitioner's position that you have to look at the totality of the situation. And in this case, there were two challenges, even though one was to an alternate. I believe that that is, you know, part of the totality of the circumstances. Well, but I just want you to focus on the concern I have. If I were to or the Court were to agree with you that the challenge of the alternate was foul, okay, since the person who replaced the alternate never participated in the decision-making, what difference does it make? We're litigating an issue that may be a wrong to this juror, but not a wrong to this defendant. Well, I believe it's wrong to the process. It doesn't necessarily mean, you know, the outcome may, you know, actually might have been just or something like that, but we're dealing with the process itself, which is that you can't do that. So this is a step beyond anything that I have seen in the cases, is that not true? If it is the case that this substitute for the challenged alternate never served, this is beyond anything we have in the case law so far, is it not? Well, you know, I'm not sure about that, but the main reason is I believe that you can look at the alternate also as part of the circumstances. All right. May I ask just one question? I may be confusing this with another case we have that involves a Batson challenge, but did not an African-American sit on this jury as well? Yes, there was one African-American. And so that person would have been seated before we got around to this business about the alternates, correct? Yes. All right. And the other major issue here is in regards to the insufficiency of the evidence. And that issue basically deals with timing, because here we had a bank robbery. We had a co-defendant who wasn't at the bank. He wasn't seen, you know, parked in front of the bank. And then we have the petitioner who did state that he was in the bank and, you know,  he's later seen in the car with his co-defendant, and then the co-defendant is followed by the police for quite a distance, and the co-defendant is not taking any evasive action whatsoever. And then when the police puts on the overhead light, then shortly after that the co-defendant parks the car, and then that is when a petitioner gets out of the car and starts running. And after the petitioner starts running, that's when the co-defendant does act and tries to evade the police and then gets into an accident. And so then the question is how long did the robbery and the burglary occur? I mean, was the burglary and the robbery complete before this accident happened? And I think if you look at the record, it shows that the alley, the place where a petitioner came to rest was about 90 yards away from the mouth of the alley where he fled from the car. And so it would just be a matter of seconds before he got to his place of temporary safety. And the petitioner did get to a place of safety. And he was the one. But before or after the collision? Before the collision. The petitioner got to the place of, certainly it's his position that he got to the place of safety before the collision because the place where he had left some items was this address where he had left some items was 90 yards from the mouth of the alley where the car had stopped. And when he ran. And so it would have taken him just a few seconds to get to that place. And in the meantime, there was this rather long chase with a car when finally the co-defendant gets into an accident. So the petitioner would have arrived at that place of safety before the accident. And I guess I don't, is this a felony murder case? Yes, it is. So in other words, the question is, well, the question is, first of all, whether the co-defendant was an aid or an abettor. And, you know, when this, and there was also insufficient evidence that the co-defendant was an aid or an abettor. And there was insufficient evidence as to whether he was an aid or an abettor, because, like I said, the only evidence was he was seen in the car after the fact. He wasn't taking any evasive action until he was warned that something was wrong because the police stopped him. And then. Yeah, well, yes, it was on the record and it was presented in the opening brief in the state. And in other words, so if the co-defendant was not an aid or an abettor, and he, that means he didn't commit, he wasn't, the traffic accident wasn't part of, you know, the robbery and the burglary. He was just acting independently. He didn't, he didn't know, the evidence is insufficient that he knew, you know, that he had known about the robbery or he was engaged in the planning or any of that. It just, the record reflects that he was seen in the car with a petitioner shortly before the petitioner fled from the car. And it is a petitioner's position that that is just insufficient evidence that the co-defendant had been involved. And therefore, the fact that he got into an accident should not be a basis for imposing a felony murder. So there's insufficient evidence to show that he was involved at all, not that he disengaged from the whole endeavor before the accident took place. Well, it's both. One is that there's insufficient evidence that he was involved at all, and the other is that the crimes were complete before the accident. And the facts were presented to the jury regarding this getting out of the car 90 yards from an alley. I'm sorry. Well, I think you've indicated that these matters were, evidence was presented and the arguments were made to the jury. Now, the jury found, presumably, that he didn't reach a place of temporary safety. That is a question for the jury under California law, is it not? Right. Well, the evidence was presented to them. I mean, of course, you're telling, you're asking us to decide that evidence was insufficient. So I'm asking what the evidence was. I mean, are you asking us just to conclude because he was 90 yards away, we should just assume he went to this place of temporary safety or was there evidence that he actually did? Well, yes, there was evidence that there was, I think, 218 Doheny, there was items that were left there, like a glove, you know, other items. And then he was found right near the vicinity of 218 Doheny. And so there were, I think there was some money, you know, a glove, you know, some items that were left, you know, at that location. Any evidence he went directly there as opposed to later? Well, it just would seem, it would be the inference is that he went there directly because he was seen later, you know, away from that scene after he had deposited those, you know, those items. You have more than used your time. Do you have any follow-up? Do you want to? No, ma'am. Thank you. Good morning, Deputy Attorney General J. Michael Lehman on behalf of Respondent Ernest Rowe, the warden in this case. As an initial matter, I'd like to point the Court to the first issue, the sufficiency of the evidence. At page 13, note 9 of our brief, we noted that the interplay of the Jackson Standard and AEDPA had yet to be decided by this circuit. Since then, it has been decided, and the site on that is 1 H. B. Allen, 408 F. 3rd, 1262, 9th Circuit, 2005. Specifically at page 1274, the Court held that under AEDPA, the state court, or excuse me, under the state court, the state court, under AEDPA, the Court applies, and I'm quoting now, the standards of Jackson with an additional layer of deference, end quote, to the state court's decision. Now, unless the Court has any questions on the front. The state court's decision as to what, I'm sorry. The Jackson decision as to whether there was sufficiency. In other words. You're talking about sufficiency of the evidence, is that? Yeah, I'm just saying in 1 H., 9th Circuit has held that it's double deference, that's all. Just like in IEC claims, what have you. What was the page number of your 408 citation? I'm sorry, 4, oh. 1274? It was 408 F. 3rd, 1262 at 1274. All right. And unless the Court has any questions regarding the first three issues, I'd like to just focus on the Batson. And I'd like to separate out the two distinct challenges, because they're procedurally in different postures. Going first to the second, the alternate, Virtue J. In that case, or excuse me, on that challenge, the prosecutor did provide his reason. Which, of course, was that that particular juror's, or potential juror's, husband worked in a group home, including with juveniles who had been adjudicated delinquents and worked in Juvenile Hall. Now, at this point, the only question is whether that was Step 3, a valid reason. I bring it up simply to note that, as a historical fact, the State Courts, the State Judiciary, in their decision under Batson, Hernandez, and recently Miller L. 1, is entitled to deference. In other words, if this were simply U.S. females, that would be entitled to deference. As an EBPA case, it's entitled to an extra layer of deference under, as a factual finding that requires clear and convincing evidence to overturn it, under 2254 E. 1 and then D. 2. And now, turning to Kevin W. Wait a minute. So I take it, then, that you disagree with the District Court's approach to this de novo? I disagree only insofar as Virtue J. the second. Because, Wade et al. notwithstanding, those cases all have applied to Step 1 analysis. I simply wanted to hive off that, because it is a distinct analysis. And that is, if it's a historical fact, Step 2, Batson. So on Step 2, you're saying that it is entitled to deference, even though our law is that as to Step 1, we give no deference. Right. And, again, it would be entitled to deference, even if this were a Federal, even if EBPA did not exist, simply as a historical fact. And that's Hernandez v. New York, and that's Batson v. Kentucky itself. Back to Kevin. Wait, though, is the deference to the accuracy of the finding, that's correct? Yes. But the legal issue here, I think, as was being argued on behalf of the defendant, is that there are other jurors who had similar characteristics. And so that's a legal question, is it not, as to whether or not the two, are you suggesting that somehow we have to defer to the weighing of those comparisons? I think so. I think that is clear, and, again, that's, even if EBPA didn't exist, the case law is clear that the trial judge is the person who sits there watching what goes on, is entitled to deference as to the Step 3 determination. I get these mixed up. When was the Batson comparative argument first raised? That's an excellent point. To my understanding, the first time it was raised was not at the trial court. In fact, I'd invite the Court to look at the actual CT itself, the portions that they are. Not much was raised there. The first time a comparative analysis at all was raised was in Co-Defendant Young's Court of Appeal brief. Petitioner makes some mention of it being referred to in his petition for review to the California Supreme Court. I gather that is a reference to, excuse me for a sec, pages 324 to 325 in the ER. I don't see any comparative analysis in there. We jump to the next time it's presented is in Appellant Petitioner's opening brief in this appeal itself. So we have, it seems to me, two problems with comparative analysis. One, it was never presented to the trial court, and two, it was never presented to the district court in this Federal habeas case. So the Court is being asked to reverse, an assignment of error, asked to reverse the district court on something never presented to the district court, assuming it could have been presented to the district court at all. Well, we've jumped into comparative analysis, so let's go ahead. The only Supreme Court case I'm aware of where comparative analysis has ever been used is in Miller L. Now, Miller L. 1, the whether a COA should have been granted in the first place case, said, well, we're reviewing a state court decision. This comparative analysis business was presented to the Texas state court. Therefore, if we're going to look back and decide, and again, I think it's, we're jumping around a little bit, or I'm jumping around a little bit, but I think it's important to make sure we're clear. Comparative analysis, to the extent it's ever been used, is a step three concern. So there must have been a reasonable inference, and the prosecutor must have been given a chance to give an explanation. If we're at that step three, there are some cases, if it's been preserved, that have discussed, I will say, comparative juror analysis. Going back to Miller L. 1, the Supreme Court never said it is appropriate to consider it. It simply said, well, this is what the Texas state court's considered. If we're going to look back and decide if it was reasonable, we'd better look at what was before it. Miller L. 2 comes around, again, at stage three, in essence, was a prosecutor lying when they said they had good, valid, race-neutral reasons for, excuse me, jurors. The court says, and forgive me for a minute while I go over the site, at 125 S. Court 2317, it's a general site, at page 2334, note 15, we're going to consider the state of Texas, respondent state of Texas, because you acceded to this being before the district court. In fact, you submitted it to the district court, and if it wasn't before the district court, this comparative analysis, you would look even worse, because it would be very clear to us that this was for a racially discriminatory purpose. So it's a little late in the day for us, the Supreme Court, to now object to this being before the district court. Those are the only cases I'm aware of. There are a couple of Ninth Circuit cases we've discussed in our brief where the State trial court was presented with a comparative analysis, therefore, that comparative juror analysis on step three, therefore, that formed the basis of the State record, and therefore, that was fair game for an analysis. Here, back to your initial question, Judge Schroeder, and I realize I've gone fairly afield on that, it was not presented to the State trial court. It was not presented to the district court in this case. So it was our position that as vis-a-vis Virtue J, whether indeed the prosecutor was telling the truth, when he said, well, I use this peremptory, because this is where her husband worked, and after all, he was involved with various kids who were delinquents in juvenile hall, that there was no comparative juror analysis there to dispute that at any level. Now going back to, if I can get us back to the Kevin W. At that point, and again, that one's a little distinct, because again, no step one prima facie case was established. When Kevin W. was excused, he was the fourth challenge used. He was the first African-American that was excused. There was already an African-American in the box. That African-American served on the jury. Excuse me. Who had already been passed? Yes. And did serve on the jury. And that's clear from the record? That is clear from the record. And that was not disputed at any point by the Petitioner. And by the way, I'm sorry, I don't know the answer to your question, Mr. Levy, as far as whether any alternates served on the final. I don't think so, is my recollection, because I would have seen it in the CT at one point if one was replaced. But I do want to point out, as far as the alternates, one of the alternates was African-American. And the trial judge did take that into account, at least in the Kevin W. case. As one of the relevant circumstances. Well, now, do you have any position on whether or not, first of all, we have the question of whether or not there was a prima facie case giving rise to an inference of discrimination with respect to the challenge of Kevin W. Yes, our position is there most certainly was no prima facie case. And we would have to review that de novo. You concede that. Yes, but de novo, in whether there was a prima facie case, that's step one, under a Van Tran v. Lindsay, etc. Step two is, if you say yes, the trial court was incorrect, one has to find it was unreasonable to find that there was no prima facie case. I understand all of that. Now, do you think this court should be dealing with, or the district court should be dealing with, any issue with respect to whether or not there was anything wrong with the challenge of Virtue J. When, for all we know, the person who was drawn to replace that juror never made a decision in this case. Do you think we should go down that road and say, now, not only are we going to litigate what affected the outcome of this case, or could have had an impact on the outcome of this case, but we're going to litigate in this case with the threat of a new trial on a convicted murderer? Because we're not sure that the jury selection, or the selection process of an alternate that had nothing to do with the decision making, might be wrong. Do we litigate that? And if we do, if we litigate that, that is one more blow to the whole concept of preemptory challenges. If we keep litigating this with all of the unsatisfactory results that we can imagine, the only remedy is going to be no more preemptory challenges. And there are already people articulating that. That's Justice Breyer's concurrence. And others. The quick answer to it is I hadn't given it any thought. But as I'm standing here, the answer I would say at that level is no, for the very reasons you're saying. But more importantly, I'm unaware of any authority that's actually held a Batson violation based on an alternate. Who has never served. Who has not served. And for that reason alone, ignore the AEDPA concerns. The United States Supreme Court must hold that. As I stand here today, I can't think of any, certainly any Federal case and no California case that's ever held that when an alternate who did not serve was perhaps excused for improper reason, i.e. race, that is a Batson or Wheeler for that matter. I've simply never heard of that. All right. Now, the only thing I find wrong with this is that what I've been talking about here during the course of this argument and using up counsel's time was never suggested in the district court. Correct. Has never been suggested in the briefs. Correct. It's just the assumption that we're going to litigate this issue about the selection of this alternate juror who had nothing to do with the decision-making in this case. And I find it troubling. I find it troubling in any event. Well, we may have waived it. Of course, this Court will uphold any basis for the district courts. But I'm still, nothing would, let me just understand this. We've seated a jury. Yes. We're now dealing with alternates. Yes. There is an objection to Virtue J. Yes. The Court says, whether there had been a prima facie or not, the case or not, the Court asks for an objection. It said, why don't you make it easy for us? Yeah. Okay. That's literally what the trial judge said. And this explanation is given that the husband works in a group home, et cetera. Okay. And then the trial court did what? Said that's good enough? Accepted the reason, yes. Accepted it. And there was no argument that this had been done before? Or that you had a similar person on the jury who was white who had been seated? Was not raised then by the defense? Oh, I see. You're saying this miniature version of CJA, the comparative jury analysis. Yeah. Correct. Correct. So then it gets raised for the first time on the appeal. They go back and they say. A form of that was. I don't recall that precise argument being made. Well, let's just assume that it's sort of made. Okay, we've been through everything and we've now read everything. We've gone through all. Right. And we see that there was an objection raised to the alternate that wasn't raised to the person seated. And so therefore. The. There must have been. This must have been pretextual. Let's just assume that was me. Now, do we have any. Is there any binding of any published authority that says that it's. And the state court did what? What did the state court of appeals do? Excuse me. Well, the state court simply held that there had been no. That's the slash Wheeler violation. Right. And have we ever in any published decision said that that holding. Where the. In the comparative basis. Just based on a comparative context. Was unreasonable. Has this court ever held that a state courts. Upholding a facially neutral. Explanation. Was. Unreasonable. Was an unreasonable application. Of federal law. Where the. Where the argument. Was. Presented. Into the state. Appellate court for the first time was based on comparative. Analysis. I'm. Right. We're being asked to hold. Right. Presented the California court of appeal. For the first time. I'm unaware of any case that has been. That has happened. I'm aware of cases where. The prosecutor refused to give an answer. And it was there. And there was a comparative jury analysis. I'm unaware of any case where. This court has held that. It could be first raised. Say the California Supreme Court of California court of appeal. Of course, California's rule. There's a procedural bar in California to raising it for the first time. Right. That bar was not actually exercised by the California court of appeal here. Right. In fact, it actually. Post states. That's what I was. Post states this. I'm unaware of any case that's dealt with the bar. Again. Petition was convicted in 1996. This became final in 99. We were dealing with a bit of a different world back then. But, again, all of that's a very long way of answering your question. No, I'm unaware of any such. And then it is also true, as you said earlier, correct? That the matter of comparative analysis was not presented to the United States district court. No. No. Being raised the first time in this court in the federal courts on this appeal. Yes. And take it out of the habeas context. Take it out of the criminal context. That's just flat out waiver. Did I hear you correctly or read correctly? I have the impression that the whole matter of comparative analysis, so to speak, was raised by the co-defendant. Correct. Co-defendant Young. This defendant somehow incorporated, successfully incorporated that argument. He threw in what went off and finds a boilerplate sentence at the end saying we. Okay. And with what little remains of my time, I simply want to be clear about Kevin W. that there was nothing presented to the trial court other than the fact this particular person is African-American. I think you need to ask them. And this court has numerous times, we've pointed to in the briefs, Wade v. Terhune, Colbert v. Gomez, U.S. v. Vasquez-Lopez, has indicated or held that you can't simply point to a member of a cognitive group without more, a single member of a cognitive group, and form a prima facie case. Thank you. Unless the Court has any questions. Thank you. Yeah, we'll give you a minute. First of all, I'm getting a little bit confused about all of this comparative analysis business. There was a comparison. To the court of appeal, the Petitioner did present, you know, a comparative analysis argument. It may not be as clear as it can be today because they didn't have the benefit of the new Supreme Court decisions. And, you know, especially in regards to Miller L., you know, but there was some presentation, and there was, you know, objection to the challenges to, you know, both jurors, I mean, Kevin W. and Virgil J. And then in regards to the standard of review, well, first of all, in regards to the Jackson standard, to say that there has to be an extra level of deference, I think, you know, it would be a wrong interpretation of Jackson, because that would make it almost an irrebuttable presumption to say that there are so many levels of deference that you have to show to the state courts, because Jackson itself, you know, has a large level of deference to the state courts. And then in regards to the Batson issue, standard of review, I believe the district court said that it was a de novo standard, because the state court had used the Wheeler standard, which is a more stringent standard. And so I don't see why, you know, it should not be de novo, as the other side argues. I think that's it. Thank you very much, Your Honor. The case just argued is submitted. Before hearing the last case, the Court will take a 10-minute recess.
judges: Schroeder, Leavy, Sedwick